UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DESIGN DATA CORPORATION,

      Plaintiff,

      v.

UNIGATE ENTERPRISE, INC., et al.,

      Defendants
_____/

No. C 12-4131 PJH

**ORDER GRANTING MOTION TO DISMISS**

      Before the court is defendants' motion to dismiss the second cause of action. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion.

      Plaintiff Design Data Corporation ("DDC") is the producer of copyrighted structural steel detailing software known as SDS/3. DDC filed this action on August 6, 2012, against defendants Unigate Enterprise, Inc.; Unigate Graphic, Inc.; and Unigate Investment, Inc. – each of which is alleged to do business as Unigate Steel Detailing – and also against defendants Louis Liu, Helen Zhang, and Jianjun Liu.

      In the original complaint, DDC asserted a claim of copyright infringement and a claim of unjust enrichment/restitution. Defendants moved to dismiss the second cause of action for unjust enrichment/restitution, on the basis that there is no cognizable cause of action for unjust enrichment/restitution under California law. DDC responded with a first amended complaint ("FAC") in which it replaced the second cause of action for unjust enrichment/restitution with a cause of action for breach of contract implied in law/quantum

meruit, in which it seeks restitution.  On October 31, 2012, defendants filed a motion to dismiss the second cause of action asserted in the FAC, arguing that it fails to state a claim because it is preempted by the Copyright Act.

Under the Copyright Act, "all legal or equitable rights" that are equivalent to the rights that are protected by the Copyright Act and are "works of authorship" fixed in a tangible medium" that come within the subject matter of the Copyright Act, are "governed exclusively" by the Copyright Act.  17 U.S.C. § 301.  This provision of the Copyright Act expressly prohibits states from legislating "in the area of copyright law."  Downing v. Abercrombie & Fitch, 265 F.3d 994, 1003 (9th Cir. 2001).

The Copyright Act preempts state law claims where the plaintiff's work "come[s] within the subject matter of copyright" ("subject matter" requirement) and the state law grants "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright" ("equivalence" requirement).  17 U.S.C. § 301(a); see Montz v. Pilgrim Films & Television, Inc., 649 F.3d 975, 979 (9th Cir. 2011); Downing, 265 F.3d at 1003.  Here, the parties do not appear to contest that DDC's work (the copyrighted software) falls within the "subject matter" of copyright.  What they do dispute is whether the asserted state right is equivalent to any of the exclusive rights within the general scope of copyright.

To survive preemption, the state law cause of action must assert rights that are qualitatively different from the rights protected by copyright.  Contract claims generally survive preemption because they require an "extra element" that changes the cause of action.  Montz, 649 F.3d at 980 (citing Benay v. Warner Bros. Ent'mt, Inc., 607 F.3d 620, 629 (9th Cir. 2010)).  This is true whether the claim is based on an express contract or on an implied contract.  See Benay, 607 F.3d at 629.  Thus, the question here is whether DDC has alleged a cause of action that requires an "extra element" apart from what is required for a claim of copyright infringement.

In the "Factual Allegations" section of the FAC, DDC alleges that it owns the copyright in the SDS/3 software; that it sells licenses and maintenance agreements that

allow individuals and businesses to use the copyrighted software; that defendants did not purchase a license or maintenance agreement for the copyrighted software; that defendants willfully and intentionally made unauthorized copies of the copyrighted software, used unauthorized copies of the copyrighted software to create drawings and electronic files that have been sold to contractors throughout the U.S., and employed businesses outside the U.S. to create drawings and unauthorized copies of the copyrighted software; and that as a result of the unlicensed or unauthorized use of the copyrighted software, defendants made ill-gotten financial profits, and DDC has suffered damages exceeding $600,000. See FAC ¶¶ 13, 14, 18-25.

In addition, in the second cause of action for breach of contract implied in law/quantum meruit, DDC alleges that defendants "unjustly received benefits at the expense of [DDC] through their wrongful conduct, including [d]efendants' infringement of the [c]opyrighted [s]oftware, which took substantial time and money for [DDC] to develop[,]" and that defendants "continue to unjustly retain these benefits at the expense of [DDC]. FAC ¶ 32.

DDC asserts further that it "reasonably expects to receive compensation for each license" for its copyrighted software; that it "reasonably expects to receive compensation as a result of software maintenance agreements that are customarily sold in conjunction with licenses" for the copyrighted software; that defendants have "utilized versions" of the copyrighted software "without licenses or authorization" from DDC; and that defendants "have received these benefits under circumstances as described above that give rise to a legal and equitable obligation to pay for the value received[,]" and are "entitled to full restitution for all amounts in which [d]efendants have been unjustly enriched at [DDC]'s expense." FAC ¶¶ 32-37.

In the present motion, defendants argue that each and every fact that DDC relies upon in the FAC falls under the subject matter of copyright law, and that DDC has not alleged any additional facts that would provide the "extra element" necessary to avoid copyright preemption. In addition, defendants assert that DDC does not and cannot state a

3

claim for quantum meruit, because one requirement of such a claim is the allegation that services were rendered under some understanding or expectation of both parties that compensation was to be made.

Defendants cite to Lewis v. Activision Blizzard, Inc., 2012 WL 5199505 (N.D. Cal. Oct. 22, 2012), which it claims provides an identical scenario to the one presented here. In that case, the plaintiff worked for a company (Blizzard) that had developed and owned an on-line multiplayer role-playing game, World of Warcraft. In response to a player who requested voices for game creatures, Blizzard recorded plaintiff's voice and an original song she had created, and used her voice for expressions by some of the game creatures. Plaintiff filed copyright registrations for her work in the expressions and the song, which she claimed had been incorporated into the game without her permission, and with out any compensation for her work. She filed a copyright infringement suit against Blizzard, and also alleged claims for commercial misappropriation and for quantum meruit.

The court held that the quantum meruit claim was preempted by the Copyright Act, because it was based entirely on seeking compensation for Blizzard's alleged unauthorized use of plaintiff's voice recordings, and thus asserted rights that were equivalent to her rights under copyright law. Id., 2012 WL 5199505 at *4. Here, defendants assert, DDC has alleged only violation of its rights of reproduction under the Copyright Act, and the second cause of action relies on those same facts. Thus, defendants argue, the second cause of action is preempted.

In opposition, DDC asserts that the gist of the second cause of action is the allegation that by their willful use of DDC's copyrighted software, as described in the FAC, defendants "entered into and breached an implied contract to pay [DDC] for licenses and maintenance agreements." Opp. at 3. DDC asserts, however, that there are "several qualitative differences" between such a contract claim and a "copyright violation" claim.

First, DDC asserts, the Copyright Act does not provide an express right for the copyright owner to receive payment for use of a work – all it does is give the copyright owner the right to prevent distribution, copying, or the creation of derivative works (citing 17

4

U.S.C. § 106).

Second, DDC argues, a plaintiff suing for what it calls "failure to pay under a contract" must prove extra elements beyond use or copying, including mutual assent and valid consideration.

Third, DDC contends, a breach of contract claim asserts rights against only the contractual counterparty, not against the public at large. DDC cites a Seventh Circuit case for the proposition that "a copyright is a right against the world" whereas "contracts . . . generally affect only their parties." See ProCD, Inc. v. Zeidenberg, 86 F.3d 1447, 1454 (7th Cir. 1996).

Thus, DDC argues, a number of courts have concluded that claims involving the subject matter of copyright do not contest rights that are the equivalent of rights under the Copyright Act, and are thus not preempted. In support, DDC cites two cases from the Ninth Circuit and one from the Sixth Circuit for the proposition that contract claims require proof of an "extra element" – the existence of an actual agreement between the plaintiff and the defendant involving a promise to pay for use of disclosed ideas. See Montz v. Pilgrim Films & Television, Inc., 649 F.3d 975, 980-81 (9th Cir. 2011); Grosso v. Miramax Film Corp., 383 F.3d 965, 968 (9th Cir. 2004); Wrench LLC v. Taco Bell Corp., 256 F.3d 446, 455 (6th Cir. 2001); see also 4 Nimmer on Copyright § 19D.03[c][2]).

Here, DDC argues, the FAC alleges that defendants "knew" that their use of the copyrighted software created an implied promise to pay the licensing fees and fees for maintenance agreements (citing FAC ¶¶ 33-36), but they nevertheless used the software without purchasing any licenses or maintenance agreements (citing FAC ¶¶ 33-35). DDC contends that this "implied contract" does not require only that defendants honor plaintiff's exclusive rights under the Copyright Act – it also requires defendants to pay for their use of the copyrighted software. DDC claims that because defendants "knew" their use of the copyrighted software created an implied obligation to pay for licensing fees and a maintenance agreement, the "extra element" test is satisfied.

With regard to defendants' argument that the FAC fails to state a claim for quantum

5

meruit because there are no facts pled showing that defendants assented by any conduct with the expectation that they would be required to pay for any services, DDC responds that "this is precisely what is alleged in the FAC" – that defendants utilized the copyrighted software for economic gain with the clear expectation of payment for licenses and maintenance agreements (citing FAC ¶¶ 19-23, 33-36). DDC asserts that to contend that defendants utilized the copyrighted software without purchasing any licenses but nevertheless did not expect to have to purchase licenses is "disingenuous" and is also contrary to the allegations of the FAC. However, DDC requests that if the court finds the allegations "lacking," it should grant leave to amend.

In reply, defendants reiterate that the claim of breach of implied contract is preempted by the Copyright Act because the rights being asserted come within the subject matter of copyright, and are equivalent to the exclusive rights within the general scope of copyright.

In response to DDC's argument that because § 106 of the Copyright Act does not provide owners with an exclusive right to be paid for their works, it seeks relief that falls outside the rights protected by copyright law, defendants respond that DDC is ignoring § 501, et seq. of the Copyright Act, which provides for various monetary and other remedies for violations of copyright holders' exclusive rights. Defendants contend that the payment sought by DDC in its second cause of action is simply a request for a different remedy, rather than an assertion of an additional right not protected by copyright law. Defendants point again to the decision in Lewis, where the court held that the quantum meruit claim was preempted because the facts pled supported only a claim of unauthorized use of copyrighted material.

Defendants argue further that the cases cited by DDC (Montz, Grosso, Wrench) are factually distinct from this case because they involve a creator of an idea or a screenplay disclosing it to a business (movie producer, restaurant chain) with the expectation of developing a business deal, and which the business in fact used but without compensating the creator. Here, defendants assert, there is no allegation of theft of ideas, but rather theft

6

of a fixed expression of ideas (the copyrighted software), and thus the alleged conduct that DDC claims violates its copyrights is the same conduct it alleges provides the basis for the breach of contract and quantum meruit claim.

Defendants also contend that DDC has not alleged the requisite bilateral agreement for recovery in quantum meruit, and that it cannot do so. Thus, defendants assert, even if DDC had properly alleged defendants' knowledge that payment was required, an allegation of knowledge, without more, is insufficient to state a claim for breach of an implied contract. Defendants argue that there was no contact between DDC and defendants, and also notes that DDC alleges that defendants' alleged use of the copyrighted software was without its knowledge. Defendants argue that if DDC did not even know about the alleged unauthorized use of the software, then there is no way an agreement could have existed between the parties.

Finally, defendants assert that amendment would be futile, and that leave to amend should therefore be denied. They note that DDC has provided no information about how it would amend the second cause of action to cure the deficiencies identified above, without at the same time contradicting the allegations in the FAC. For example, they contend that no additional facts could show a bilateral agreement as required for recovery in quantum meruit without contradicting the allegation in the FAC that defendants' use of the software was without DDC's knowledge or permission.

The court finds that the motion must be GRANTED. As noted above, the only question is whether the second cause of action asserts a claim that raises an "extra element" in addition to the elements required for a copyright infringement claims.

Under California law, a contract is either express or implied. Cal. Civ. Code § 1619. "An express contract is one, the terms of which are stated in words." Id. § 1620. "An implied contract is one, the existence and terms of which are manifested by conduct." Id. § 1621.

In addition, California law recognizes two varieties of implied contract: contracts are implied in law where "the equitable theory that a contract to pay for services rendered is

implied by law for reasons of justice." Hedging Concepts, Inc. v. First Alliance Mortgage Co., 41 Cal. App.4th 1410, 1419 (1996). This is a quantum meruit claim. Id. Contracts are implied in fact where the parties' actions evince an intention to create a binding contract. Weitzenkorn v. Lesser, 40 Cal. 2d 778, 794 (1953); see also Montz v. Pilgrim Films & Television, Inc., 649 F.3d 975 (9th Cir. 2011). Here, plaintiff claims to be asserting a cause of action for breach of a contract implied in law, or quantum meruit.

To state a claim for quantum meruit, a plaintiff generally must allege that it acted pursuant to either an express or implied request for services and that the services rendered benefitted the defendant. Day v. Alta Bates Med. Ctr., 98 Cal. App. 4th 243, 248 (2002); see also Raisin Bargaining Ass'n v. Hartford Cas. Ins. Co., 715 F.Supp. 2d 1079, 1090 (E.D. Cal. 2010). The plaintiff is not required to plead or prove the existence of a contract, but must show that "the services were rendered under some understanding or expectation of both parties that compensation therefore was to be made." Huskinson & Brown, LLP v. Wolf, 32 Cal. 4th 453, 458 (2004).

The contract at issue in Montz was an implied-in-fact contract – not an implied-in-law contract seeking recovery under a theory of quantum meruit as DDC has asserted here. Nevertheless, even had DDC alleged breach of an implied-in-fact contract, the claim would be subject to dismissal. The implied-in-fact contract in Montz was based on the relationship formed in "idea submission cases." These are cases in which an author makes his work (written material such as a movie screenplay, or other expression of creative concepts and ideas) available to, e.g., an agent, a producer, or a director. In such cases, California courts have held that an implied-in-fact contract is formed based on that personal relationship. See, e.g., Desny v. Wilder, 46 Cal. 2d 715 (1956). Thus, the courts have also held that privity between the parties is a necessary element of an implied-in-fact contract claim. Rokos v. Peck, 182 Cal. App. 3d 604, 617-18 (1986); Mann v. Columbia Pictures, Inc., 128 Cal. App. 3d 628, 647 n.6 (1982).

A "Desny claim" is a claim for breach of implied-in-fact contract involving the conveyance or submission of an idea, and requires that the plaintiff show that he prepared

8

the work, disclosed the work to the offeree for sale, and did so under circumstances from which it could be concluded that the offeree voluntarily accepted the disclosure knowing the conditions on which it was tendered and the reasonable value of the work. Grosso v. Miramax Film Corp., 383 F.3d 965, 967 (9th Cir. 2004) (citing Faris v. Enberg, 97 Cal. App. 3d 309, 318 (1979)). "The law will not imply a promise to pay for an idea from the mere facts that the idea has been conveyed, is valuable, and has been used for profit; this is true even though the conveyance has been made with the hope or expectation that some obligation will ensue." Faris, 97 Cal. App. 3d at 138. In Grosso, the Ninth Circuit held that the rights protected by a Desny claim are not the equivalent to the rights protected by copyright, because of the Desny claim's implied promise to pay the reasonable value of the work disclosed. Id., 383 F.3d at 968.

Thus, there are several problems with DDC's second cause of action and its argument in opposition to the present motion. First, DDC appears to be attempting to squeeze its claim into the Desny framework, but DDC's claim is not that it submitted some idea or other creative work to defendants for sale (or licensing), and that defendants accepted the idea or creative work with the understanding that DDC anticipated that it would be paid. Rather, DDC asserts that it developed the software, that it obtained a copyright for the software, and that defendants used the software without authorization. That is a classic copyright infringement claim, not a Desny claim.

In addition, as noted above, DDC has not even asserted a claim of breach of implied-in-fact contract. Rather, the claim is for breach of implied-in-law contract, with recovery under a theory of quantum meruit. Quantum meruit "is not the same as a contract implied in fact." In re De Laurentiis Entm't Group, Inc., 963 F.2d 1269, 1272 (9th Cir. 1992). "Unlike the 'quasi-contractual' quantum meruit theory which operates without an actual agreement of the parties, an implied-in-fact contract entails an actual contract, but one manifested in conduct rather than expressed in words." Maglica v. Maglica, 66 Cal. App. 4th 442, 455 (1998).

The court in Maglica acknowledged that "because an implied-in-fact contract can be

9

found where there is no expression of agreement in words, the line between an implied-in-fact contract and recovery in quantum meruit . . . is fuzzy indeed." Id. at 456 n.14. Nevertheless, the court emphasized, "quantum meruit is a theory which implies a promise to pay for services as a matter of law for reasons of justice, while implied-in-fact contracts are predicated on actual agreements, albeit not ones expressed in words . . . ." Id. (citations omitted). Thus, "recovery in quantum meruit is necessarily a different theory than recovery on an implied-in-fact contract." Id.

Witkin has discussed the uncertainty created by decisions that are not clear about whether quantum meruit is based on implied-in-law or implied-in-fact contracts. See 1 Witkin, Summary of California Law, Contracts (10th ed. 2005) § 1036. In addition, Nimmer has warned against confusing contracts implied in law (quasi-contract) with contracts implied in fact:

> Unfortunately, many courts in dealing with idea cases fail to distinguish between a contract implied in law and a contract implied in fact. An action in quasi contract is not a true contract since "'quasi contracts, unlike true contracts, are not based upon the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice.' . . . Quasi contractual recovery is based upon benefit accepted or derived from which the law implies an obligation to pay." An implied in fact contract on the other hand is a consensual agreement presenting the same elements as are found in an express contract except that in an implied in fact contract the promise is not expressed in words but is rather implied from the promisor's conduct.

Wrench, 256 F.3d at 458-59 (quoting 4 Nimmer on Copyright § 16.03 at 10-10 to 16-11 (quoting Weitzenkorn v. Lesser, 40 Cal.2d 778, 794 (1953)) (footnotes omitted)).

In any event, DDC has not alleged a claim that includes an "extra element," sufficient to survive preemption by the Copyright Act. A claim based on an implied-in-law contract includes no "extra element" in addition to the defendant's unauthorized use of the copyrighted work, and it is therefore equivalent to the rights protected by the Copyright Act. "[A] state law cause of action . . . for quasi-contract should be regarded as an 'equivalent right' and hence, pre-empted insofar as it applies to copyrighted subject matter." 1 Nimmer on Copyright § 1.01[B][1][g]; see also Wrench, 256 F.3d at 459.

Although the court is doubtful – based on the above discussion – that any

10

amendment can cure the deficiencies in the FAC, the court will grant DDC leave to amend to attempt to state a claim for quantum meruit. Any amended complaint shall be filed by February 26, 2013. No new parties or causes of action may be added without leave of court.

**IT IS SO ORDERED.**

Dated: January 29, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge